## WILLSEN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. February 13, 1903.)

1. STREET RAILROADS—INJURIES TO PEDESTRIANS—WITNESS—CROSS-EXAMINATION—SCOPE.

Where plaintiff claimed that the killing of his infant intestate by one of defendant's street cars was caused by the negligence of the motorman in not looking ahead, and his failure to stop the car in time to prevent the injury, while defendant claimed that the motorman was looking ahead and that the child ran suddenly in front of the car, so close that it could not be stopped, plaintiff, on cross-examination of the motorman, was entitled to inquire as to his method of operating the car at particular places; the rate of speed at which he ran; his obedience to orders relating to the operation of his car before a schoolhouse within a short distance of the place of the accident; the crossing by people on the street; the application of his brake; statements which he made concerning the accident; what he had testified to on a former trial; and whether or not his present version of the transaction was not different from his previous testimony.

Appeal from trial term, New York county.

Action by Julius Willsen, as administrator, etc., of Lawrence Willsen, deceased, against the Metropolitan Street Railway Company. From a judgment in favor of defendant, and from an order denying plaintiff's motion for a new trial, he appeals. Reversed.

See 74 N. Y. Supp. 774.

This action is brought for the purpose of recovering damages for the alleged negligent killing of the plaintiff's intestate by being run over by one of the defendant's cars. The deceased was an infant between five and six years of age, and the accident took place on Lexington avenue, between Ninety-Sixth and Ninety-Seventh streets, in the city of New York. The plaintiff's evidence tended to show that the child was playing on the sidewalk with its fifteen year old brother, and in going after a ball fell on defendant's north-bound track; that the motorman on the car was not looking ahead, and although he had abundant time in which to stop the car, which was going down grade and at a very high rate of speed, he failed to stop it, and the child was so injured by the car that it died on account thereof. On the part of the defendant evidence was given tending to show that the motorman was looking straight ahead; that the child was standing on the pavement; that when the car was close to it the child suddenly ran onto the track and fell down; that the motorman had the car under complete control, but at the time when the child went onto the track it was so close to the car that it could not be stopped, and the injuries received were unavoidable.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William McArthur, for appellant.
Henry Melville, for respondent.

HATCH, J. This case, as presented upon the evidence, authorized the jury to find a verdict in favor of either party thereto, and their finding in favor of the defendant cannot be disturbed for lack

of evidence to support it; for if the testimony of the defendant was believed by the jury, as their verdict indicates it was, it shows that the defendant was guilty of no negligence, and that the death was the result of an unavoidable accident. The testimony of the grip-man upon this question was of the last consequence to the defendant, as he gave important and controlling testimony bearing thereon, and the plaintiff became entitled to the fullest latitude in cross-examination of such witness respecting the material part of his testimony. The plaintiff had given evidence tending to show that the gripman, when he reached Ninety-Seventh street, and near the point of the accident, was not attentive to his duties, but was looking up at some one in the window of a house upon the street, and was laughing at somebody in the window. This testimony was denied by the gripman. Testimony was also given by the plaintiff tending to show that the car was running at a rapid rate of speed at the point of the accident, and had been so running before it reached such point. This testimony was also contradicted by the gripman. Upon cross-examination of this witness he was asked what the rate of speed was at which the car was running when the boy fell upon the track, and answered six to seven miles an hour. He was then asked, "What is the usual rate of speed?" This was objected to as irrelevant and incompetent; that the only question before the court was the rate of speed at this time. Objection was sustained, and an exception taken. He was then asked, "At what rate of speed were you in the habit of propelling your car at that period on a level plane?" Objection was interposed, and the objection sustained. He was then asked as to the grade of the street at this particular place, and gave the grade of the street at that point as compared with the grade of the street at other points, showing that the grade between Ninety-Sixth and Ninety-Seventh streets was quite steep, and the witness stated that he knew he was approaching such grade. He was then asked, "Did it not occur to you at that particular locality that you should have slackened and gone less fast than usual?" This was objected to as argumentative, and the objection was sustained. He then stated that he was examined as a witness on the last trial, and was asked, "Q. Did you deny or attempt to deny that you had been smiling or laughing up at the window of the west side"? Objection was made and sustained. He was then examined as to how far the boy was in front of the car when he stumbled and fell, and answered, "Over 18 feet." "Q. The car stopped when it passed the boy, within five feet; isn't that so?" "A. And that would make 13 feet." "How do you reconcile that with the statement you have made?" Defendant's counsel objected, and the court sustained the objection. He was then questioned concerning when he put on the brake before the boy fell, and answered that he had the car under control going down the hill, and when he saw the boy he put on the brake. He was then asked how far away was the boy when the witness saw him leave the curb, and answered, "When I saw the boy first, 20 or 25 feet." "Q. When you saw the boy leave the curb, that was the reason why you put on the brake?" Objection was interposed that the question was argumentative, and the court

sustained the objection. He was then asked as to whether he was excited at the time of the accident, and answered that he was not. He was then asked, "Q. At what rate of speed used you to go through that section of Lexington avenue, namely, Ninety-Sixth and Ninety-Seventh streets?" Defendant objected, and the objection was sustained. Plaintiff's counsel thereupon stated, "I want to show whether or not the gripman on that occasion deviated from his usual course." Objection was interposed and sustained. He was then asked if he knew that between Ninety-Fifth and Ninety-Sixth streets there was a schoolhouse and that gripmen had orders to go slower past the schoolhouse. He testified that he slackened the rate of speed when passing the schoolhouse. He was then asked, "Q. What was the rate of speed you were going. at"? Objection was made as to the speed between Ninety-Fifth and Ninety-Sixth streets, and the objection was sustained. He was then asked if he signed a statement in connection with the transaction after the accident, and stated that he did. "Q. Did you give the same version as you do now?" This was objected to, as calling for his opinion. The court sustained the objection. He was then asked, "in substance." Same objection was interposed and sustained. "Q. You were aware that persons crossed that avenue at places not the regular crossings; isn't that so?" It was objected to as immaterial, and the objection sustained. To all of these rulings of the court the plaintiff's counsel took an exception.

The cross-examination was proper, and bore upon matter material to the issue which was being tried. It was cross-examination of a witness who had given important and evidently controlling evidence in favor of the defendant. The subject-matter to which the questions were directed were substantially all found in the direct testimony of the witness. Plaintiff had the right to lay before the jury the character of the gripman, and to question him fully as to the methods of operation of his car at particular places; the rate of speed at which he ran; his obedience to orders; the operation of his car before the schoolhouse within a short distance of the place of the accident; the crossing by people upon the street; the application of his brake; the statements which he had made concerning the accident; what he had testified to upon the former trial; and whether or not his present version of the transaction upon the stand was not different from that which he had previously given upon the other trial or in his statement. These were all pertinent matters to lay before the jury, and from which they might determine whether the operation of the car at the time when the accident occurred was proper, and whether the gripman's testimony was entitled to credence, and upon such subjects the plaintiff was entitled to examine the witness fully and completely.

In addition to this, whether or not the gripman, just prior to the happening of the accident, was attentive to his duties, or was looking up at the windows of the adjoining houses, was a controlling question in the disposition of this controversy, and the plaintiff was entitled to ask and receive an answer as to whether upon the former trial he had either denied, admitted, or failed to deny that he had

not been smiling and laughing up at the window on the west side of the street. Exclusion of such question was clearly erroneous. If he had been permitted to answer that question, he might have testified that he did not deny such fact upon the former trial, and therefrom the jury might conclude that the reason why he did not was because it was a fact, and thereby discredit his statement upon the present trial that he had not been looking up at the windows just prior to the accident, and might have credited the testimony of the plaintiff upon such subject, and therefrom rendered a verdict in favor of the plaintiff. We might conclude as to the other questions, answers to which were excluded, that it would not be of sufficient consequence to the plaintiff to show prejudicial error; but the exclusion of the whole series of questions pertaining to the issue presented for determination, including that which might show that the gripman was not attentive to his duties, could scarcely help but work prejudicial error to the plaintiff's case. These errors are of so plain a character as to call for a reversal of the judgment.

Judgment and order should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.